[Cite as *State v. Green*, 2016-Ohio-4810.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 15 MA 0006 |
| VS. | ) | |
| | ) | OPINION |
| CELINE GREEN | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:         Criminal Appeal from County Court No.
                                                        4 of Mahoning County, Ohio
                                                        Case No. 2014 CR B 729

JUDGMENT:                                      Reversed and Remanded.


APPEARANCES:
For Plaintiff-Appellee                         Attorney Paul Gains
                                                        Mahoning County Prosecutor
                                                        Attorney Ralph Rivera
                                                        Assistant Prosecutor
                                                        21 W. Boardman Street, 6th Floor
                                                        Youngstown, Ohio 44503


For Defendant-Appellant                   Attorney James Lanzo
                                                        4126 Youngstown-Poland Road
                                                        Youngstown, Ohio 44514


JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb


                                                        Dated: June 30, 2016

DeGENARO, J.

{¶1} Defendant-Appellant, Celine Green, appeals the judgment of the Mahoning County Court No. 4, convicting her of marijuana possession and illegal possession of marijuana drug paraphernalia, and sentencing her accordingly. On appeal, Green argues the trial court erred by overruling her motion to suppress.

{¶2} Upon review, Green's first assignment of error is meritorious. The officers extended the duration of the traffic stop past the time needed to complete the mission of the stop, without reasonable suspicion to do so. For this reason, the trial court erred in denying the motion to suppress. This would render the second assignment of error moot. Accordingly, the judgment of the trial court is reversed and the matter remanded.

## Facts and Procedural History

{¶3} On July 21, 2014, Green was charged with possession of marijuana, R.C. 2925.11(A) and (C)(3)(a), and illegal use or possession of marijuana paraphernalia, R.C. 2925.141(C), both minor misdemeanors, following a traffic stop of Green's vehicle due to a loud exhaust. Green filed a motion to suppress all evidence collected from the warrantless search of her and her vehicle, along with any statements she made to police. She asserted that the officers extended the stop beyond the reasonable time without reasonable suspicion to do so. She also argued her statements to police were obtained in violation of her constitutional rights.

{¶4} At the suppression hearing, Austintown Township Police Officer Christopher Pasvanis testified that he observed a green, four-door Saturn that "had a very loud exhaust" and initiated a traffic stop of Green's vehicle. Upon approaching the vehicle, Pasvanis observed two occupants, whom he recognized from a traffic stop about six months prior, in which he found the two "in a car sleeping with marijuana all over them."

{¶5} When Pasvanis came to the window of Green's car, he asked for her license and registration; he did not see or smell any drugs in the car at that time. Green acknowledged the violation, stating "that her exhaust went bad just several days prior to that date."

**{¶6}** Pasvanis then called Sergeant Christopher Collins to bring a canine officer to perform a sniff of the vehicle. Pasvanis stated he requested this based upon his knowledge that the two occupants had possessed drugs six months prior. According to both Pasvanis and Collins, it took less than ten minutes for Collins and the dog to arrive. While Collins was en route to the scene, Pasvanis issued Green a written warning for the defective exhaust. Pasvanis stated that it took him about 1-2 minutes to write Green's warning.

**{¶7}** Upon Collins' arrival, he was briefed by Pasvanis about the reason the dog had been requested, specifically the occupants' past marijuana possession. Both occupants were asked to step out of the vehicle while Collins and the dog conducted the vehicle sniff. Collins testified that the dog had been specially trained in detection of narcotic odors, receives annual certifications through the State of Ohio, and can detect all derivatives of marijuana, cocaine, heroin, LSD, and crack cocaine.

**{¶8}** Collins began by conducting a cursory visual search himself, looking inside the vehicle from the outside to see if there were any drugs in plain sight; there were none. Collins then walked the dog around the vehicle's perimeter. Green was standing next to the car at that time. The dog alerted on the passenger's side of the vehicle. Collins then placed the dog inside the vehicle, who then alerted to Green's purse, which she left inside the vehicle. Collins stated that this took approximately 1-3 minutes.

**{¶9}** Collins then searched the purse and found "[a] small jar containing marijuana, suspected marijuana, and a multicolored marijuana pipe." Green's personal identifiers were also found inside her purse. Pasvanis asked Green if the marijuana and pipe belonged to her and she admitted that those items were hers, in her purse. Green was not *Mirandized* prior to this questioning. Pasvanis then wrote Green summonses for possession of marijuana and illegal use or possession of marijuana drug paraphernalia, both minor misdemeanors. Three exhibits from the State were admitted at the hearing: the marijuana, marijuana pipe and the positive testing results from those items from the BCI lab. The defense admitted one exhibit,

the written warning for the defective exhaust issued by the Austintown police.

{¶10} After considering the evidence presented at the hearing, the trial court denied Green's motion to suppress, finding that "the officer had reasonable grounds for the stop of the Defendant's vehicle [and] * * * that during the traffic stop probable cause developed for the arrest of the Defendant" for the two charges.

{¶11} Green later pled no contest to one count of marijuana possession, R.C. 2925.11(A) and (C)(3)(a), and one count of illegal use or possession of marijuana drug paraphernalia, R.C. 2925.141(C), both minor misdemeanors. The trial court imposed a $50.00 fine for each count, and a 180-day driver's license suspension. That same day, Green filed a notice of appeal and requested a stay which was granted by the trial court.

### Excessive Time for Traffic Stop

{¶12} In her first of two assignments of error, Green asserts:

> The Trial Court erred when it failed to grant Defendant-Appellant's motion to suppress based upon the extension of the traffic stop of the Defendant-Appellant beyond the time required to issue a warning ticket to the Defendant-Appellant without reasonable suspicion and probable cause to do so.

{¶13} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Because the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard. *Id.*

{¶14} It is well settled that the use of a trained drug-detection dog during a lawful traffic stop generally does not trigger Fourth Amendment protection. *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). A drug-

detection dog may sniff around the exterior of a defendant's vehicle during a lawful traffic stop in absence of a reasonable suspicion of drug-related activity. *Id*. However, as the U.S. Supreme Court recently held in *Rodriguez v. United States*, 135 S.Ct. 1609, 191 L.Ed.2d 492, (2015), a traffic stop may not be extended in order to conduct a dog sniff, absent reasonable suspicion. *Id*. at 1616-1617.

**{¶15}** In *Rodriguez*, the defendant was stopped for a traffic violation. Seven to eight minutes after the officer completed the traffic stop by issuing a written warning, a drug-detecting dog was walked around the vehicle and alerted to the presence of drugs. This led to the recovery of illegal drugs in the car. *Id*. at 1610. Rodriguez moved to suppress the evidence and the trial court denied the motion, citing existing precedent and concluding that "the seven or eight minute delay was an acceptable 'de minimis intrusion on Rodriguez's personal liberty.' " *Id*. at 1611. The Eighth Circuit affirmed, finding the extension of the stop permissible as a de minimis intrusion. *Id*.

**{¶16}** The Supreme Court considered whether police, absent reasonable suspicion, could extend an otherwise-completed traffic stop in order to conduct a dog sniff. *Id*. at 1614. The Court held that the stop may not be prolonged beyond the time reasonably required to complete the "mission" of the stop, which includes issuing the ticket or warning and other ordinary inquiries incident to the traffic stop and related to officer safety such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. at 1615. The Court emphasized that "the critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop." *Id*. at 1616.

**{¶17}** *Rodriguez* held that because the officer there had completed the mission of the traffic stop—issuing the written warning and related checks—the officer could not detain Rodriguez for the dog sniff, absent reasonable suspicion that he had been involved in other illegal activity. *Id*. at 1616–1617.

**{¶18}** Neither the Seventh District nor the Ohio Supreme Court has had occasion to address or apply *Rodriguez*. Other districts have, and the facts in *State*

*v. Gurley,* 4th Dist. No. 14CA3646, 2015-Ohio-5361, provide a helpful contrast to those in *Rodriguez.* There, the Fourth District held the dog sniff did not prolong the stop where the K-9 unit was nearby, the dog completed the sniff and alerted to the presence of drugs five minutes into the stop, and the trooper testified that it takes 10-12 minutes to issue a traffic citation. *Gurley* at ¶ 8, ¶ 28.

**{¶19}** The present case is more factually similar to *Rodriguez.* The evidence in the record demonstrates Pasvanis made the stop and then called for Collins and his canine partner. Pasvanis then wrote and issued the warning in one to two minutes. The drug-detecting dog took approximately 10 minutes to arrive and another three to search the vehicle. Thus, by the time the dog arrived, the stop had been prolonged eight to nine minutes after Pasvanis issued the warning and the mission of the stop was complete. The dog did not complete the sniff of the vehicle until 11-12 minutes after the warning was issued.

**{¶20}** Based upon these facts, the dog sniff extended the stop beyond the time reasonably required to complete the traffic investigation for a loud exhaust. The cases cited by the State regarding the routine duration of traffic stops in Ohio are all pre-*Rodriguez* cases.

**{¶21}** Accordingly, unless there was reasonable suspicion to extend the stop to conduct the dog sniff, the evidence gathered from the dog sniff should have been suppressed. *Rodriguez.* Here, there are no additional facts that the officer discovered during the traffic stop that would lead to reasonable suspicion to extend the stop. Neither officer saw or smelled drugs or other contraband in the vehicle. There was no indication Green or her passenger appeared to be under the influence of drugs.

**{¶22}** The fact that Green was recognized by Collins from an earlier drug incident cannot form the requisite reasonable suspicion for extending the stop. As the Fifth District has explained: " 'knowledge of a person's prior criminal involvement (to say nothing of a mere arrest) is alone insufficient to give rise to the requisite 'reasonable suspicion' to justify a shift in investigatory intrusion from the traffic stop to a firearms or drugs investigation.' " *State v. Brown,* 5th Dist. No. 2009AP050024,

2010-Ohio-1110, ¶ 27, quoting *U.S. v. Sandoval,* 29 F.3d 537, 542 (10th Cir.1994). *Accord Joshua v. Dewitt,* 341 F.3d 430, 446 (6th Cir.2003). "Accordingly, a person's reputation or past record does not, standing alone, provide an officer with a reasonable suspicion to support a *Terry*-type investigative stop or search." *Brown* at ¶ 28.

{¶23} Accordingly, Green's first assignment of error is meritorious.

{¶24} In her second and final assignment of error, Green asserts:

> The trial court erred to the prejudice of the appellant in not suppressing statements made by Defendant-Appellant to law enforcement officers in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 479.

{¶25} The statements Green made to police occurred after the dog alerted to drugs in the car. However there was no reasonable suspicion for the dog sniff. That resolution renders this assignment of error moot and it need not be addressed. App.R. 12(A)(1)(c).

{¶26} In sum, the trial court erred in denying Green's motion to suppress the evidence collected as a result of the dog sniff of the vehicle. Accordingly, the judgment of the trial court is reversed, and the case is remanded for suppression of the evidence and disposal of the case by the State.

Waite, J., concurs.

Robb, J., concurs.